FILED

2024 Feb-01  PM 02:51
U.S. DISTRICT COURT
N.D. OF ALABAMA



**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **JOSHUA RESHI DUDLEY,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **7:22-cv-08034-LSC** |
| | ) | **(7:18-cr-00066-LSC-JEO-1)** |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**MEMORANDUM OF OPINION**

### I.     Introduction

Before this Court is a motion by Joshua Reshi Dudley ("Dudley" or "Petitioner") to vacate, set aside, or otherwise correct his sentence, pursuant to 28 U.S.C. § 2255 ("§ 2255") (Doc. 1.) The United States ("Government") opposes his motion. (Doc. 10.) Dudley's § 2255 motion (doc. 1) is due to be denied and the present action dismissed with prejudice for the reasons stated below.

### II.     Background

#### A.     Charges and Sentencing

On March 29, 2018, a grand jury charged Dudley in an indictment with felon

in possession of a firearm in violation of 18 U.S.C. § 922(g). (Cr. Doc. 1.)[1] On May 17, 2018, Dudley entered into a plea agreement and subsequently pled guilty before this Court on May 31, 2018. (Cr. Doc. 12; Minute Entry 05/31/2018.)

The Presentence-Investigation Report ("PSR") stated because he was an "armed career criminal" based upon 18 U.S.C. § 924(e), his guideline imprisonment range was 188 months to 235 months. (Cr. Doc. 31 at 24, 30.) On January 8, 2019, this Court sentenced Dudley to 215 months of imprisonment to run concurrently with any yet-to-be imposed sentence in his Tuscaloosa County Circuit Court case. (Cr. Doc. 33 at 2.) Dudley then filed a notice of appeal on January 22, 2019, and the Eleventh Circuit affirmed this Court's decision on September 24, 2021. (Cr. Docs. 36, 45; *US v. Dudley*, No. 19-10267.[2])

Dudley was represented by Allison Case (Ms. Case) at his change of plea hearing and Mr. Tobie John Smith (Mr. Smith) on appeal.

**B.    § 2255 Proceedings**

---

[1] "Cr. Doc." refers to an entry on the docket sheet in the underlying criminal case, *United States v. Dudley*, No. 7:18-cr-00066-LSC-JEO-1.

[2] In the interest of brevity, the Eleventh Circuit opinion in Dudley's case will hereinafter be cited as Cr. Doc. 45, which is the document number for the opinion in the underlying criminal case.

Dudley filed this pro se § 2255 motion on September 1, 2022.[3] (Doc. 1.) He alleges three grounds in his petition, with each having numerous subparts. (*Id*.) From what this Court can ascertain, it appears that Dudley is alleging four claims of ineffective assistance of counsel with three of the allegations against only his trial counsel and one against both trial counsel and appellate counsel; two claims regarding improper jurisdiction pursuant to the *Rehaif* decision; and one claim based on the enhancement he received pursuant to the Armed Career Criminal Act ("ACCA"). (*Id.*) All subparts will be addressed under each of these three broad topics.

### III.   Timeliness and Non-Successiveness of Dudley's § 2255 Motion

This Court entered Dudley's judgment on January 8, 2019. (Cr. Doc. 33.) He then filed a timely notice of appeal, with the Eleventh Circuit's opinion issued on September 24, 2019. (Cr. Doc. 45.) He then had ninety days to file a writ of certiorari with the Supreme Court of the United States. *See* Sup. Ct. R. 13. Dudley timely filed his petition with the Supreme Court on December 15, 2021. (S.Ct. No. 21-6657.) On March 21, 2022, the Supreme Court denied his petition for writ of certiorari,

---

[3] Applying the "mailbox rule," the Eleventh Circuit deems a prisoner's § 2255 motion as filed upon the "date that he delivered it to prison authorities for mailing, presumptively, . . . the day that he signed it." *Jones v. United States*, 304 F.3d 1035, 1038 n.7 (11th Cir. 2002) (per curiam).

therefore making his conviction final. (*Id.*) Thus, he had until March 21, 2023 to file his petition to comport with the one-year statute of limitations articulated in 28 U.S.C. §§ 2255(f). Because he filed his petition in September of 2022, his motion is timely.

Additionally, Dudley is bringing his first § 2255 motion, so it is not "second or successive" within the meaning of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See* 28 U.S.C. §§ 2255(h), 2244(b)(3)(A).

## IV.   Standard of Review

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments pursuant to 28 U.S.C. § 2255 are limited. A petitioner is entitled to relief under § 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255; *United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir. 2000); *United States v. Walker*, 198 F.3d 811, 813 n.5 (11th Cir. 1999). "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (quoting *Richards v.*

*United States*, 837 F.2d 965, 966 (11th Cir. 1988)).

In litigation stemming from a § 2255 motion, "[a] hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations. Nor is a hearing required where the petitioner's allegations are affirmatively contradicted by the record." *Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989) (quoting *Guerra v. United States*, 588 F.2d 519, 520–21 (5th Cir. 1979)). However, an evidentiary hearing is appropriate if, "accept[ing] all of the petitioner's alleged facts as true," the petitioner has "allege[d] facts which, if proven, would entitle him to relief." *Diaz v. United States*, 930 F.2d 832, 834 (11th Cir. 1991) (quoting *Agan v. Dugger*, 835 F.2d 1337, 1338 (11th Cir. 1987) and *Futch v. Dugger*, 874 F.2d 1483, 1485 (11th Cir. 1989)).

## V.    Discussion

### A.    Ineffective Assistance of Counsel Claims

An ineffective assistance of counsel claim has two components: (1) the petitioner "must show that the counsel's performance was deficient" and (2) the petitioner "must show that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the first component, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id*. at 688. The second component is satisfied only

when the defendant shows that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

In examining counsel's performance, the Court should be "highly deferential." *Id.* at 689. The Court must make "every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* The Court must also "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*; *see Bell v. Cone*, 535 U.S. 685, 702 (2002) (holding that "tactical decision[s] about which competent lawyers might disagree" do not qualify as objectively unreasonable). A petitioner who seeks to overcome this presumption does not carry his burden by offering bare accusations and complaints, but rather "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690.

Where a petitioner fails to show that his counsel's performance fell below an objective standard of reasonableness, the court need not address the issue of prejudice. *See Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000). Where the court does consider this prong, the petitioner must show that counsel's errors were

prejudicial and "deprive[d] the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. This burden is met by establishing by a reasonable probability that the outcome of the proceeding would have been different but for counsel's errors. *Williams v. Threatt*, 529 U.S. 362, 391–93 (2000); *Strickland*, 466 U.S. at 691.

> **1. The record contradicts Dudley's allegation that he was heavily medicated and could not remember his criminal conduct and there is no merit to his claim that Ms. Case coerced him into pleading guilty.**

Dudley alleges that he was coerced by his attorney "into pleading guilty" because she knew "that he was being heavily [sic] medicated, while in jail due to mental illnesses." (Doc. 1 at 4.) Dudley believes he informed counsel that he was heavily medicated and could not remember information about why he was in jail. (*Id*. at 5.) He claims his attorney then informed him that he should plead guilty because he will be found guilty. (*Id.* at 6.)

Contrary to Dudley's assertions, his counsel signed a declaration and stated:

I have no recollection that Mr. Dudley advised me during our initial meeting that he was medicated. I recall that we had coherent discussions about his case . . . . I also recall receiving a phone call from Assistant U.S. Attorney Greg Dimler, advising that the local agents assigned to Mr. Dudley's case wanted to also include a charge under 18 U.S.C. § 924(c) . . . . I recall that AUSA Dimler advised that he did not believe that an additional charge under § 924(c) was necessary if Mr. Dudley pleaded to the § 922(g)(1) charge because the § 922(g)(1)

charged likely carried an enhanced sentenced under the ACCA . . . . I recall that I recommended that Mr. Dudley plead guilty to the § 922(g)(1) based on my review of the evidence against him and his sentencing exposure . . . and the possibility of a superseding indictment . . . . Though I told Mr. Dudley my recommendation, consistent with my standard practice, I advised Mr. Dudley that the ultimate decision was his . . . . I did not have any concerns about Mr. Dudley's competency based on my interactions with him . . . . My recollection is that, during the time period between the disclosure of the Presentence Report ("PSR") and the Sentencing Hearing, I learned that the Shelby County Jail had recently prescribed Mr. Dudley medication. I believe that I then requested the records from the Shelby County jail and contacted the U.S. Probation Officer who drafted the PSR about the then-newly prescribed medication and the possibility of adding it to the PSR."

(Doc. 10-1 at 1-2.) Although "contested fact issues may not be decided on affidavits alone . . . . Where the affidavits are supported by other evidence in the record[,] the court may rely upon them." *Owens v US*, 551 F.2d 1053, 1053 (5th Cir. 1977) (citing *James v. Smith*, 465 F.2d 397 (5th Cir. 1972)). Most of what Ms. Case describes in her declaration is supported by other evidence in the record, primarily the plea colloquy.[4] Firstly, when asked how his attorney did on his case, Dudley responded with "She done good." (Cr. Doc. 41 at 5.) The Court then asked if there were any complaints regarding his lawyer, and Dudley stated "No, sir. I am satisfied." (*Id*.) Further, the Court asked Dudley whether "In the last two days, have you taken

---

[4] "[T]here is a strong presumption that the statements made during the [plea] colloquy are true." *US v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994).

any drugs, legal drugs or illegal drugs?" and "Do you suffer from any mental impairment, physical illness, or emotional illness or impairment that might interfere with you understanding what we are doing here today?" (*Id*. at 5-6.) To both inquiries, Dudley responded "No, sir." (*Id*.) He also responded "Yes, sir" when asked if the factual basis described in the plea agreement should be relied upon. (*Id*. at 13.) Lastly, he said "No, sir" when asked "Has anybody threatened you, forced you, or coerced you in any way to get you to plead guilty?" and then also said "Yes, sir" when asked "Are you wanting to plead guilty because you are guilty?" (*Id.* at 14.) Thus, Ms. Case's statements are supported by Dudley's own statements during the plea colloquy because he had no complaints about his lawyer, and in fact described her work as "good," stated he had no mental impairments, and also stated that he had not taken any medications.[5] (*See id.*) Based upon Ms. Case's declaration and the plea colloquy, this Court finds that Dudley has failed to "show that the counsel's performance was deficient" as what is required to sustain an ineffective assistance of counsel claim. *Strickland*, 466 U.S. 687. Thus, as to the issue of him being heavily medicated due to his mental illnesses, there is no hearing required because the

---

[5] The Court also recognizes that Dudley claims to have memory loss from medications and alleges he cannot remember his criminal activity and why he is in jail, but somehow recalls several details in his petition about the alleged conduct of Ms. Case.

allegations are affirmatively contradicted by the record." *See Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989) (internal citations omitted).

Further, as to the allegation that Ms. Case coerced him into pleading guilty, there is no relief to offer. "A defendant cannot complain of coercion where his attorney, employing [her] best professional judgment, recommends that the defendant plead guilty." *US v. Buckles*, 843 D.2d 469, 472 (11th Cir. 1988) (internal citations omitted). For these reasons, Dudley's first allegation of ineffective assistance of counsel is due to be dismissed.

### 2. Dudley's allegation that Ms. Case failed to investigate plausible defenses is without merit.

In his second allegation of ineffective assistance of counsel, Dudley stated that "Attorney Case failed and refused to invistigate [sic] and to consult with Mr. Dudley about any viable defense that could be plausible." (Doc. 1 at 8.) He further elaborates that she should have investigated his mental state and she did not interview anyone associated with him "regarding the possibility of a mental defect disease." (*Id.*) He says had she inquired into this, he would have then went to trial instead and would have "testified and been found not guilty due to his mental state . . . . he pleaded guilty because she said he was guilty and would not win at trial." (*Id.*)

This appears to be an extension of his first ineffective assistance of counsel claim, and for the same reasons, is due to be dismissed. As described above, Ms. Case's declaration is contrary to Dudley's allegations: she states that she has "no recollection" of Dudley informing her of any medications or mental illness concerns and also that it was ultimately in his discretion of whether or not to plead guilty. (Doc. 10-1 at 1.) Although this cannot be relied upon blindly, the Court may rely upon declarations when supported by other evidence. *Owens*, 551 F.2d at 1053. As noted above, Dudley stated he was not medicated and had no mental illnesses that would keep him from understanding what was taking place. (Cr. Doc. 41 at 5-6.)

Therefore, the first prong of ineffective counsel is not established. The first inquiry requires that the petitioner "must show that the counsel's performance was deficient." *Strickland*, 466 U.S. at 687. This case was not at the trial phase yet, so it was reasonable for his attorney to not have formed a trial strategy and interviewed witnesses for potential defenses. Additionally, the factual basis in the plea demonstrates that the evidence was convincing, and it was not objectively unreasonable for counsel to recommend entering into a guilty plea. Therefore, because the Court finds there was no deficient performance, the Court need not address the prejudice prong. *Id*. at 697.

### 3.   Dudley's allegation that he was not properly charged and did not understand the enhancement has no merit.

#### i.   Dudley was not charged with a violation of 18 U.S.C. § 924(c).

The third allegation of ineffective assistance of counsel is that Ms. Case "failed to insure [sic] that Mr. Dudley understood the law in the application of th[e] ACCA." (Doc. 1 at 9.) Petitioner elaborated further and said that "he was not charged by indictment with a 924(c)(1) violation, nor did he plead guilty to such . . . . Had he been made aware of the law, he would not have pleaded guilty . . . . Ms. Case prejudiced his right to make knowingly[,] intelligent choices at critical stages." (*Id*.)

First and foremost, there appears to be a misunderstanding on Mr. Dudley's part as to how the enhancement articulated in 18 U.S.C. § 924(e) ("§ 924(e)") applies. Section 924(e)(1) has two requirements, with the one relevant for this allegation stating "[i]n the case of a person who violates **section 922(g) of this title**." (emphasis added). Thus, unlike what Dudley alleges, a violation of § 924(c) is not what is required for the § 924(e) enhancement to potentially apply. Further, to the extent Dudley is attempting to allege a violation of § 924(e) needed to be present in the indictment, this is untrue. *US v. Sneed*, 600 F.3d 1326, 1329 (11th Cir. 2010) (stating "Section 924(e)(1) does not require [a] separate indictment . . . ."))

Therefore, his attorney could not be ineffective for failing to explain that he was charged with § 924(c) because of the simple fact that he *was not* charged with that section.

> ii.   **Ms. Case was not deficient in explaining the ACCA enhancement in 18 U.S.C. § 924(e) to Dudley.**

Additionally, because pro se pleadings are to be liberally construed,[6] this Court will address how he has not alleged ineffectiveness of counsel in relation to the explanation of the application of the ACCA. First, the record contradicts Dudley's allegation that he did not know about the enhancement in § 924(e) and that his attorney did not discuss it with him. At Dudley's change of plea hearing, the following interaction took place:

> THE COURT: BUT THERE IS SOMETHING CALLED THE ARMED CAREER CRIMINAL ACT; IT'S AN ENHANCEMENT. DID YOUR LAWYER TALK TO YOU ABOUT THAT?
>
> THE DEFENDANT: YES, SIR.
>
> THE COURT: SO, IF THE ARMED CAREER CRIMINAL ACT APPLIES TO YOU, THEN YOUR IMPRISONMENT BECOMES NOT LESS THAN 15 YEARS . . . . IT APPLIES TO YOU IF, PRIOR TO THE DATE YOU ARE CHARGED WITH POSSESSING THE FIREARM OR FIREARMS IN THIS CASE, YOU HAD BEEN CONVICTED OF THREE FELONIES THAT WERE EITHER SERIOUS DRUG OFFENSES OR VIOLENT FELONIES AS DEFINED BY THE UNITED STATES CODE, IN ANY COMBINATION. IF YOU WERE CONVICTED OF THREE FELONIES IN THAT COMBINATION PRIOR TO THE DATE YOU'RE

---

[6] *See Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998) (per curiam).

CHARGED WITH POSSESSING A FIREARM OR FIREARMS IN THIS CASE, THEN IT WOULD BE MANDATORY THAT I APPLY THIS ENHANCEMENT. DO YOU UNDERSTAND THAT?

THE DEFENDANT: YES, SIR.

THE COURT: DO YOU HAVE ANY QUESTIONS ABOUT THAT?

THE DEFENDANT: NO, SIR.

(Cr. Doc. 41 at 10-11.) Thus, not only did Dudley state on the record that his attorney had explained this to him, but he also expressed he understood it when this Court explained it to him. (*Id*.) This Court even asked if he had any questions relating to the enhancement and as shown above, the defendant said "No, sir." (*Id*. at 11.) Additionally, Ms. Case stated in her affidavit[7] under the penalty of perjury that she recalls advising Dudley "that he likely faced an enhanced sentence under the Armed Career Criminal Act." (Doc. 10-1 at 1.) Because of Ms. Case's statements and the fact "[t]here is a strong presumption that the statements made during the [plea] colloquy are true,"[8] this Court will presume that it is true that Ms. Case made him aware of the enhancement, and further, that he understood it when this Court explained it to him since that is what Dudley said. For these reasons, this Court finds

---

[7] Although "contested fact issues may not be decided on affidavits alone . . . . Where the affidavits are supported by other evidence in the record[,] the court may rely upon them." *Owens v US*, 551 F.2d 1053, 1053 (5th Cir. 1977) (citing *James v. Smith*, 465 F.2d 397 (5th Cir. 1972)).

[8] *US v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994).

no merit to the allegation that Ms. Case did not adequately inform Dudley of the charges against him.

### 4.    There is no merit to Dudley's allegation that his trial and appellate counsel were ineffective for not objecting to the applicability of the ACCA enhancement.

Lastly, there is no merit to Dudley's ineffective assistance of counsel claim alleging his trial (Ms. Case) and appellate (Mr. Smith) counsel were ineffective by not objecting to the application of the ACCA enhancement. (Doc. 1 at 10.) Dudley had three Alabama state convictions for second-degree assault that were the grounds of the enhancement. (*See* Cr. Doc. 31.) In Count Four of CC11-2012, Dudley pled guilty to Ala. Code § 13A-6-21(a)(2) because he "with intent to cause physical injury to another person, cause[d] physical injury by means of a deadly weapon." (*Id*. at 18.) The Eleventh Circuit has already determined that a conviction under this provision is a "violent felony" and is proper to be used as an ACCA enhancement crime. *See US v. Mitchell*, 724 F. App'x 784, 797 (11th Cir. 2018). Additionally, in CC11-2620 and CC11-2366, he pled guilty to Ala. Code § 13A-6-21(a)(4). (Cr. Doc. 31 at 21, 23.) To determine if this subsection of second-degree assault meets the requirements of being an ACCA enhancement crime, the Court must look to see if the statute "has as an element the use, attempted use, or threatened use of

physical force against the person of another." *US v. Davis*, 875 F.3d 592, 596-97 (11th Cir. 2017).

The language of Ala. Code § 13A-6-21(a)(4) states "with intent to prevent a peace officer . . . from performing a lawful duty, he or she intends to cause physical injury and he or she causes physical injury to any person." Therefore, this subsection requires proof that not only did a defendant *intend* to cause an injury, but they *did* cause an injury. Ala. Code § 13A-1-2(12) states that "physical injury" is "impairment of physical condition or substantial pain." Certainly, a statute requiring either "impairment of physical condition" or "substantial pain" to be convicted of this subsection of second-degree assault indicates there is "as an element the use . . . of physical force against the person of another." *Davis*, 875 F.3d at 596-97. Just as the Eleventh Circuit in *Mitchell* found that a violation of Ala. Code § 13A-6-21(a)(2) was a violent crime because it required that a dangerous instrument be used that is "highly capable of causing death or serious physical injury," it is certainly reasonable to ascertain that a requirement of "impairment of physical condition or "substantial pain" leads to the same conclusion. Thus, it was reasonable for Dudley's trial and appellate counsel to not object to the predicate crimes because any argument to do so would have been futile.

B.    **Remaining Claims**

### 1.   Dudley's remaining claims are procedurally barred.

As a preliminary matter, the remaining claims are procedurally barred. "It is long settled that a prisoner is procedurally barred from raising arguments in a motion to vacate his sentence, 28 U.S.C. § 2255, that he already raised and that [the Eleventh Circuit] rejected in his direct appeal." *Stoufflet v. US*, 757 F.3d 1236, 1239 (11th Cir. 2014). On appeal, Dudley argued two distinct points:

> Dudley argues on appeal that the district court improperly relied on the unconfirmed factual proffer from his state plea colloquy to determinate that the offenses were committed on different occasions [for the purpose of the ACCA enhancement.] Dudley also argues for the first time on appeal that the Supreme Court's decision in *Rehaif v. United States*, 139 S. Ct 2191 (2019), necessitates vacating his guilty plea to being a felon in possession of a firearm.

(Cr. Doc. 45 at 2-3.) The Eleventh Circuit ultimately affirmed this Court's decision and stated:

> [W]e conclude that the district court did not err in considering the prosecutor's factual proffer from Dudley's state plea colloquy concerning the dates of his prior offenses when conducting the ACCA's different-occasions inquiry because Dudley implicitly confirmed the factual basis for his plea. We also conclude that Dudley is not entitled to relief on his *Rehaif*-based challenge.

(*Id*. at 3.) In his § 2255 petition, Dudley now states the indictment "must be vacated for lack of jurisdiction" because the *Rehaif* decision required that "the government must prove that the defendant had knowledge that was in the statute of violating

federal laws." (Doc. 1 at 13-14.) He further alleges this leads to his guilty plea being "involuntary and unknowingly given contrary to Due Process" since the "record reveals that neither, he, nor his counsel, nor the court correctly understood the essential elements of the crime with which he was charged." (*Id*. at 15.) As to the improper ACCA enhancement allegation, Dudley says that the *Wooden* case has clarified what "occasion" means and his predicate crimes for the enhancement now should be classified as an "ongoing incident." (*Id*. at 17.) Further, he alleges he "does not have three prior convictions for a 'violent felony'" pursuant to *Borden v. US*. (*Id*. at 18.)

Despite these allegations, these decisions have already been heard and rejected by the Eleventh Circuit, and they are procedurally barred from being relitigated. *Stoufflet*, 757 F.3d at 1239. The Eleventh Circuit decided that *Rehaif* offered Dudley no relief because he "does not assert that he would have changed his decision to plead guilty had he known that the government had to prove his knowledge of felon status" and "had the government been required to prove that Dudley knew he was a felon at the time he possessed a firearm, there is overwhelming evidence to show that it would have easily done so." (Cr. Doc. 45 at 32) (citing *US v. Bates*, 960 F.3d 1278, 1295 (11th Cir. 2020)). Further, in regard to the ACCA enhancement, the Eleventh Circuit held there was no error because the

district court relied "on the prosecutor's factual proffer in Dudley's plea colloquy to find by a preponderance of the evidence that the three qualifying prior convictions for Alabama assault occurred on three separate, distinct occasions. (Cr. Doc. 45 at 31.) For these reasons, these grounds alleged by Dudley are procedurally barred.

**2.** **Dudley's claims are barred by the plea waiver present in his plea agreement with the government.**

Along with being procedurally barred, these remaining allegations are also barred by the appeal waiver present in Dudley's plea agreement with the government. "A criminal defendant who wishes to plead guilty can waive the right to challenge his conviction and sentence in exchange for a better plea deal." *King v. United States*, No. 20-14100, 2022 WL 2980490, at *1 (11th Cir. July 28, 2022). "A plea agreement is, in essence, a contract between the government and a criminal defendant." *United States v. Howle*, 166 F.3d 1166, 1168 (11th Cir. 1999). "Among the considerations that a defendant may offer as a part of such a contract is waiver of his right to appeal, provided that the waiver is made knowingly and voluntarily." *Id.* "With limited exceptions, a valid waiver of the right to appeal bars habeas claims brought under 28 U.S.C. § 2255." *King*, at *1. "[A] waiver is not knowingly or voluntarily made if the district court fails to specifically question the defendant concerning the waiver provision of the plea agreement during the Rule 11 colloquy

and the record indicates the defendant did not otherwise understand the full significance of the waiver." *United States v. Bushert*, 997 F.2d 1343, 1351 (11th Cir. 1993). "For an appeal waiver to bar claims raised in a § 2255 motion, at a minimum, the would-be petitioner must know at the time of the guilty plea that the right to federal habeas review exists, and [he] must realize she is giving up that right as part of her plea bargain." *Stone v. United States*, No. 20-10666-A, 2020 WL 4933699, at *1 (11th Cir. June 9, 2020).

As part of his plea agreement, Dudley expressly waived the right to challenge his conviction or sentence in a § 2255 motion:

> In consideration of the recommended disposition of this case, I, JOSHUA RESHI DUDLEY, hereby waive and give up my right to appeal my conviction and/or sentence in this case, as well as any fines, restitution, and forfeiture orders, the court might impose. Further, I waive and give up the right to challenge my conviction and/or sentence, any fines, restitution, forfeiture orders imposed or the manner in which my conviction and/or sentence, any fines, restitution, and forfeiture orders were determined in any post-conviction proceeding, including, but not limited to, a motion brought under 28 U.S.C. § 2255.

(Cr. Doc. 12 at 6-7.) Further, in the plea colloquy, Dudley responded "yes, sir" when asked by this Court: "When you signed it there on page eight, were you acknowledging that there was a waiver of your right . . . to file a post-conviction petition?" (Cr. Doc. 41 at 14.)

The only three rights reserved by the defendant to contest his conviction are: "(a) Any sentence imposed in excess of the applicable statutory maximum sentence(s); (b) Any sentence imposed in excess of the guideline sentencing range determined by the court at the time sentence is imposed; and (c) Any claims of ineffective assistance of counsel." (Cr. Doc. 12 at 7.)

Because of this waiver he signed as part of his plea agreement, his claims in grounds two and three are waived. His *Rehaif* and ACCA enhancement claims do not fall into any of the three exceptions listed above that he can bring despite his agreement with the government. These claims are not based on his sentence being in excess of the statutory maximum, his sentence being in excess of the guideline sentencing range, or ineffective assistance of counsel. Therefore, these claims as well as being procedurally barred, are also waived by his plea agreement.

**3.     There is no merit to Dudley's allegations pursuant to *Rehaif v. US.***

**i.     The *mens rea* lacking in Dudley's indictment offers no relief.**

To the extent Dudley is not procedurally barred, his allegations pursuant to *Rehaif* also have no merit. First, Dudley alleges due process requires vacating his conviction because the indictment did not have language detailing whether or not he knew he was a felon. (Doc. 1 at 14.) This additional *mens rea* requirement for 18

U.S.C. § 922(g) was announced in *Rehaif v. US* by the United States Supreme Court on June 21, 2019. 139 S. Ct. 2191, 2200. The indictment against Dudley was entered on February 22, 2018. (Cr. Doc. 1.) Thus, the indictment was proper at the time it was entered.

ii. **There is no merit to Dudley's allegation that his plea of guilt became involuntary.**

Dudley also states that because the indictment did not have all of the elements required to adjudicate him guilty of an 18 U.S.C. § 922(g) violation, his guilty plea is now involuntary. However, if *Rehaif* had been in place at the time of Dudley's indictment and guilty plea, the Eleventh Circuit has stated the Government would have been able to prove that he knew he was in a class that kept him from having the right to carry a firearm. (*See* Cr. Doc. 45 at 32.) Further, Dudley appears to have known because he stipulated to such in his plea agreement. (Cr. Doc. 12 at 5.) Additionally, "[i]f a person is a felon, he ordinarily knows he is a felon. 'Felony status is simply not the kind of thing that one forgets.'" *Greer v. United States*, 141 S. Ct. 2090, 2097 (2021) (quoting *United States v. Gary*, 963 F.3d 420, 423 (4th Cir. 2020) (Wilkinson, J., concurring)).

4. **There is no merit to Dudley's allegation that the ACCA enhancement was not applicable to him.**

      **i.**    **There is no relief for a violation of 18 U.S.C. § 924(e)(1) not being in the indictment because it is not required to be there.**

In Ground Three, Dudley alleges that he could not have received the enhancement because "nowhere in the proceedings was [he] charged with violating § 924(e)(1). This allegation has no merit. Since the Court has already addressed this earlier in his ineffective assistance of counsel claim, it will not address it fully here. However, this Court does reiterate its earlier point that Dudley did not have to be charged with § 924(e)(1) since it is an enhancement rather than a crime itself. *US v. Sneed*, 600 F.3d 1326, 1329 (11th Cir. 2010) (stating "Section 924(e)(1) does not require [a] separate indictment . . . ."). Thus, not only was it explained sufficiently as described above, there is also no merit to the allegation that he had to be charged under that statute.

      **ii.**    **Dudley's allegation that the decision in *Wooden v. US* showcases his second-degree assault charges did not occur on "separate occasions" has no merit.**

The Supreme Court decided *Wooden v. US* on March 7, 2022. 595 U.S. 360 (2022). Dudley's writ of certiorari was denied by The Supreme Court on March 21, 2022. (S.Ct. No. 21-6657.) Therefore, as a preliminary matter, if that decision impacted Dudley's case, it is likely The Supreme Court would have either not

dismissed it or remanded the case back with further instructions. Additionally, *Wooden* is not helpful for Dudley. In *Wooden*, a defendant "burglarized ten units in a single storage facility." 595 U.S. at 362. Because these occurred on the same day and in the same location, the Court found that they occurred on a "single occasion" and could only count as one ACCA enhancement predicate crime. *Id.* at 376. Thus, although Dudley's three second-degree assault convictions used to enhance his sentence were the same statutory charge, they occurred on different days and against different people. (*See* Cr. Doc. 31 at 18, 21, 23-24.) The reasoning in *Wooden* clearly relied heavily on the criminal activity taking place on the "same night, at the same place." This Court, however, does not find that reasoning applicable to Dudley's criminal activity and thus has no merit.

> ### iii.    Dudley's allegation that the decision in *Borden v. US* demonstrates that he does not have the predicate convictions for the ACCA enhancement has no merit.

Lastly, at the end of his petition in Ground Three, Dudley alleges that he does not have three prior convictions to quality for the ACCA enhancement and cites *Borden v. US* for support. 141 S. Ct. 1817 (2021). However, this Court cannot ascertain how *Borden* has any bearing on Dudley's case. *Borden* determined that "offenses with a *mens rea* of recklessness do not qualify as violent felonies under

ACCA." 141 S. Ct. at 1834. All of Dudley's predicate offenses were second degree assault convictions. (*See* Cr. Docs. 31, 42 at 4.) In one of the convictions, Dudley's conduct was described as "[t]he defendant did, with intent to cause physical injury to another person, cause physical injury by means of a deadly weapon." For the other two second degree assault convictions, his conduct was described as "with intent to prevent a peace officer . . . from performing a lawful duty, he or she intends to cause physical injury and he or she causes physical injury to any person." (Cr. Doc. 31 at 18, 21, 23.) Justice Kagan in *Borden* described reckless conduct as a person "consciously disregard[ing] a substantial and unjustifiable risk." 141 S. Ct. at 1824. She goes further to state purposeful conduct involves a defendant who "'consciously desires' a particular result." *Id.* at 1823. The knowingly mens rea involves a defendant who "is aware that a result is practically certain to follow from his conduct." *Id.* Because Dudley was guilty of *intending* his results of the assault, this is certainly not reckless conduct. Therefore, *Borden* is inapplicable to Dudley's conduct.

### VI.    Conclusion

Dudley's § 2255 motion to vacate, set aside, or correct a sentence is due to be denied and this case dismissed with prejudice for the preceding reasons.

Rule 11 of the Rules Governing § 2255 Proceedings requires the Court to

issue or deny a certificate of appealability when it enters a final order adverse to

the applicant. *See* Rule 11, Rules Governing § 2255 Proceedings. This Court may

issue a certificate of appealability "only if the applicant has made a substantial

showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such

a showing, a "petitioner must demonstrate that reasonable jurists would find the

district court's assessment of the constitutional claims debatable or wrong," *Slack*

*v. McDaniel*, 529 U.S. 473, 484 (2000), or that "the issues presented were adequate

to deserve encouragement to proceed further." *Miller-EL v. Cockrell*, 537 U.S. 322,

336 (2003) (quoting *Slack*, 529 U.S. at 484). This Court finds that Dudley's claims do

not satisfy either standard.

A separate order consistent with this opinion will be entered.

**DONE** and **ORDERED** on February 1, 2024.

L. Scott Coogler
United States District Judge

215708